**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADVANTAGE MEDICAL ASSOCIATES, P.A., a New Jersey professional association, individually and as the representative of a class of similarly-situated persons, | No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| RESILIENCE LAB INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Advantage Medical Associates, P.A. ("Plaintiff"), through undersigned counsel, brings this action on behalf of itself and all other persons and entities that were sent unsolicited advertisements of defendant, Resilience Lab Inc. ("Defendant" or "Resilience"), through facsimile transmissions. Plaintiff makes the following allegations based on personal knowledge with respect to facts known to Plaintiff and otherwise on information and belief after a reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1. On behalf of itself and a class of all others similarly situated, Plaintiff alleges claims and seeks statutory damages and other relief arising from Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2. The TCPA prohibits sending any "unsolicited advertisement" by fax. 47 U.S.C. § 227 (b)(1)(C).

3. The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

4. Attached as Exhibit A is a true and correct copy of a March 11, 2025, communication received on Plaintiff's fax machine.

5. Exhibit A advertises the commercial availability or quality of Defendant's property, goods, or services. 47 U.S.C. § 227(a)(5).

6. Defendant or some other person or entity acting on its behalf, sent Exhibit A to the number of Plaintiff's telephone facsimile machine, 732-390-1900.

7. Defendant did not have Plaintiff's prior express invitation or permission to send Exhibit A or any other advertisement to Plaintiff's fax machine.

8. The TCPA provides a private right of action and statutory damages of at least $500 per violation. 47 U.S.C. § 227(b)(3). If the Court finds an advertiser violated the Act knowingly or willfully, the Court may increase the award to as much as $1,500 per violation. The Court may also grant injunctive relief.

9. On behalf of itself and all others similarly situated, Plaintiff brings this action seeking statutory damages and other relief for each of Defendant's violations

of the TCPA occurring within the four years before this action was commenced and continuing until the Court directs notice to the class.

## THE PARTIES

1. Plaintiff, Advantage Medical Associates, P.A., is a New Jersey professional association operating the medical practice of Dr. Misha Basalaev, M.D., at 561 Cranbury Rd, East Brunswick, NJ 08816.

2. Defendant, Resilience Lab Inc., is a Delaware corporation with its principal place of business located at 928 Broadway, 5th Floor, New York, NY 10010. Defendant is not authorized to do business in New Jersey. Its registered agent in Delaware is The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange St, Wilmington, DE 19801.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

4. Personal jurisdiction exists over Defendant in New Jersey because it has committed a tortious act in the State by causing the transmission of unlawful communications Plaintiff and other New Jersey residents, or because, upon information and belief, Defendant transacts business in and makes or performs contracts substantially connected with the State.

5. Venue is proper in the District Court of New Jersey because Plaintiff received the unsolicited advertisement within this District and because Defendant committed tortious acts by causing the transmission of unlawful communications to Plaintiff and others in New Jersey.

## FACTS

6. Defendant is a for-profit company that offers psychotherapy and psychiatry services.

7. On or about August 24, 2025, Defendant was acquired by Cerebral Inc., a telehealth company that has been growing and expanding because of acquisitions like Defendant, among other things.

8. On March 11, 2025, Plaintiff received a "junk fax" advertisement on its telephone facsimile machine, which was connected to Plaintiff's fax number, 732-390-1900. A true and correct copy of the document received on Plaintiff's fax machine is attached as Exhibit A.

9. Exhibit A advertises the commercial availability or quality of Defendant's services.

10. Exhibit A includes promotional statements, such as: "At Resilience Lab, we believe in whole-person care. We strive to work collaboratively with your practice on continuity of care, and to improve your patients [sic] overall physical and mental well-being." "We currently offer psychotherapy and psychiatry services.

…" "Appointments in as little as 48 hours." "How to Refer a Patient." "To best support your practice, we want to ensure the referral process aligns with your existing workflow. We accept referrals in any of the following methods. …" "Get in contact. …"

11. Exhibit A displays Defendant's corporate address, website (that now redirects to www.cerebral.com), phone number, and the contact information for Kyle Pierce, "Head of Clinical Partnerships."

12. Defendant's fax header (top of Exhibit A) states that it was sent "11-Mar-2025 16:45 UTC" "To PCP NJ" at "7323901900" (Plaintiff's fax number) from "Resilience."

13. "PCP NJ" indicates Defendant's fax was sent to (at least) a list of primary care physicians in New Jersey.

14. Defendant did not have Plaintiff's prior express invitation or permission to send advertising material to Plaintiff's facsimile number.

15. Plaintiff has no "established business relationship" with Defendant.

16. Exhibit A contains no opt-out notice, so any established business relationship between Defendant and any other class member would be irrelevant.

17. Defendant violated the TCPA by sending unsolicited advertisements to the fax machines of Plaintiff and others.

18. Plaintiff and the other class members have no obligation to take affirmative steps to try to avoid or prevent Defendant's unlawful facsimiles. Their fax machines are ready to send or receive their own urgent, business, confidential, or private communications, not to receive Defendant's advertising material.

19. Every unsolicited fax imposes incremental, per-page costs on its recipients. When automatically printed upon receipt, as in the case of Plaintiff, an unsolicited fax transmission automatically uses and wastes the recipient's paper and ink toner. Even unprinted fax advertisements cause unnecessary expense. Printed or not, every unsolicited fax interrupts the recipient's privacy and seclusion, and wastes their valuable time, as somebody must view the sender's message to discern its source, purpose, or nature.

20. Unlike paper junk mail delivered to a general mailbox, unsolicited fax advertisements target recipients at their specific 10-digit fax numbers connected to special equipment purchased, leased, or otherwise established by the recipient as a means of receiving fax communications.

21. A fax can be received only with special equipment connected to a 10-digit telephone number. Maintaining a working fax number and fax machine costs money. Every fax transmission traverses the regulated, public telephone lines. An unsolicited fax causes undue wear and tear on the receiving fax machine. During its

transmission, an unsolicited fax might prevent the receiving machine from sending or receiving an authorized fax.

22. Fax transmissions are sent between ten-digit numbers assigned by the North American Numbering Plan Administrator ("NANPA")—from one number in the integrated North American Numbering Plan ("NANP") to another NANP number—using the Public Switch Telephone Network ("PSTN") and the ITU T.30 faxing protocol as regulated by the FCC. NANP numbers are ten-digit numbers consisting of a three-digit Numbering Plan Area code, commonly called an area code, followed by a seven-digit local number.

23. The TCPA authorizes a person or entity to maintain an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B).

24. For itself and each class member, Plaintiff seeks statutory, liquidated damages of at least $500 for each unsolicited advertisement sent by or on behalf of Defendant.

25. Plaintiff does not seek to recover for actual monetary loss from the TCPA violations.

## CLASS REPRESENTATION ALLEGATIONS

26. Plaintiff brings this action on behalf of itself and a class of all other persons and entities who were sent unsolicited fax advertisements from Resilience Lab within the four years prior to the date on which this complaint is filed.

27. The proposed class is defined as follows:

> All persons and entities who were sent a fax from Resilience Lab, on or after October 31, 2021, that described Resilience Lab's services and sought patient referrals.
>
> Excluded from the Class are Resilience Lab, its officers and directors, employees, agents, and affiliates, and the judges to whom this case is assigned.

28. Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if warranted—after discovery about Defendant's fax advertising practices.

29. Plaintiff intends to discover and include within this case all unsolicited fax advertisements sent by or on behalf of Defendant. *See* Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

30. This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23. The action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. As required by Rule 23(b)(3),

common questions of law or fact predominate over any individual question, and a class action is the superior method to adjudicate this controversy.

**Numerosity/Impracticality of Joinder**

31. On information and belief, the class includes more than 40 persons and, thus, is so numerous that individual joinder of its members is impracticable.

32. Exhibit A is a form solicitation, not addressed to any person, seeking patient referrals, and explicitly sent to one or more target lists (such as "PCP NJ").

**Ascertainability**

33. The proposed class is defined based on objective criteria, permitting class members to be identified from Defendant's records and records in the possession of third parties.

**Commonality**

34. This case involves common questions of law and fact, including but not limited to the following:

a. Whether Defendant sent "any material advertising the commercial availability or quality of property, goods, or services" to the telephone facsimile numbers of Plaintiff and the other members of the class;

a. Whether Exhibit A—and other, similar documents sent by facsimile transmission—contained "material advertising the commercial availability or quality of property, goods, or services";

b. Whether Defendant had "prior express invitation or permission" to fax advertising material to its intended recipients;

c. Whether Defendant sent faxes in broadcasts and the manner and method used to obtain or compile the target list(s);

d. Whether Defendant included on the first page of its fax advertisements a clear and conspicuous opt-out notice that complied with the TCPA's requirements;

e. Whether Defendant is directly or vicariously liable for violating the TCPA;

f. Whether Plaintiff and the other class members should be awarded $500 in statutory damages for each of Defendant's violations of the TCPA;

g. Whether Defendant's actions were knowing or willful and, if so, whether the Court should treble the TCPA statutory damages awarded to Plaintiff and the class;

h. Whether the Court should enjoin Defendant from sending future unsolicited advertisements by facsimile.

**Typicality**

35. Plaintiff's claims are typical of the claims of the other class members, as each was injured by the same wrongful conduct. Each received one or more

unsolicited advertisements sent by facsimile transmission. If Plaintiff prevails on its claims, then the other class members will prevail as well.

**Adequacy of Representation**

36. Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel who are capable, competent, and experienced in class action litigation, including TCPA "junk fax" class actions, and who will vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interests of the entire class.

**One or More Common Questions Predominate**

37. The common questions about Defendant's unsolicited fax advertisements predominate over any questions affecting only individual members of the class. The common questions do not vary from one class member to another and may be determined without reference to the individual circumstances of any class member. Separate adjudication of class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if or when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendant chooses to advertise by fax again in the future.

## Superiority

38. A class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood of individual class members prosecuting separate these claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Relief concerning the rights of the entire class, including Plaintiff, would be proper. Individualized litigation would create the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. There is no other litigation pending regarding fax advertisements sent by Defendant. Plaintiff envisions no difficulty in the management of this case as a class action. The class members and their statutory damages may be determined based upon information maintained by or available to Defendant.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

39. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

40. Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons and alleging claims pursuant to the TCPA.

41. At 47 U.S.C. § 227(b)(1)(C), the TCPA provides as follows:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

* * *

(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through--

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

> except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

42. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

43. Exhibit A contains material advertising the commercial availability or quality of Defendant's services.

44. Exhibit A was sent to Plaintiff's fax machine without Plaintiff's prior express invitation or permission.

45. Exhibit A was sent by Defendant or on Defendant's behalf.

46. At 47 U.S.C. § 227(b)(3), the TCPA provides a private right of action as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47. Defendant violated the TCPA by faxing advertisements to Plaintiff and others without their prior express invitation or permission.

48. Exhibit A does not have an opt-out notice.

49. Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising.

50. The required content of an opt-out notice ensures that fax recipients know how to prevent and avoid future fax transmissions of advertising material and provides the various cost-free means Congress required must be available 24/7 to submit opt-out requests.

51. Because Exhibit A has no opt-out notice, any "established business relationship" between Defendant and an intended fax recipient would be irrelevant to Defendant's defense in this action.

52. The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members regardless of whether its actions were negligent or well-intentioned.

53. Defendant is liable because it either sent the faxes, caused the faxes to be sent, or participated in the sending process. Further, the faxes were sent on Defendant's behalf, and Plaintiff alleges on information and belief formed after a reasonable investigation that Defendant gave actual authority or ratified the unlawful conduct.

54. Defendant knew or should have known that it did not have prior express invitation or permission to send advertisements by facsimile transmission.

55. Defendant's actions caused harm. Defendant's unsolicited fax advertisements invaded the privacy and right of seclusion otherwise enjoyed by Plaintiff and the other class members. These faxes caused Plaintiff and others to lose paper and toner consumed in printing Defendant's unsolicited advertisement. The faxes used their fax machines, increased their costs, and wasted valuable resources, including work time.

56. Plaintiff does not seek to recover for actual monetary loss. Rather, for itself and every other member of the class, Plaintiff seeks an award of at least $500 in statutory damages for each of Defendant's violations of the TCPA.

57. The Court, in its discretion, can treble the statutory damages for each violation that was knowing or willful. 47 U.S.C. § 227(b)(3).

58. Plaintiff requests that the statutory damages be trebled under 47 U.S.C. § 227(b)(3), if the Court finds Defendant's violations of the TCPA were knowing or willful.

59. The Court also should enjoin Defendant from sending future unsolicited advertisements by fax without the prior express invitation or permission of the intended recipient or a compliant opt-out notice.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in their favor and against Defendant, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, certify a class, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class.

B. That the conduct alleged herein be declared to be in violation of the TCPA;

C. That the Court award $500.00 in statutory damages for each of Defendant's violations of the TCPA or the FCC's regulations;

D. That the Court treble the statutory damages if it concludes that Defendant's violations were willful or knowing;

E. That the Court enter an injunction prohibiting Defendant from sending any advertising material by fax without first demonstrating that prior express

invitation or permission has been obtained or that the document to be sent by fax transmission includes the required opt-out notice;

F. That the Court enter judgment against Defendant and in favor of Plaintiff and the class.

G. That the Court award to Plaintiff and the classes the costs incurred in this lawsuit; and

H. That the Court award all other relief allowed by law or equity that the Court deems just and proper.

Respectfully submitted,

Advantage Medical Associates, P.A., individually and as the representative of a class of similarly-situated persons,

By: *<u>/s/ Michael J. Canning</u>*
Michael J. Canning, Esq.

Michael J. Canning, Esq.
Matthew N. Fiorovanti, Esq.
Giordano, Halleran & Ciesla, P.C.
125 Half Mile Road, Suite 300
Red Bank, New Jersey 07701-6777
Telephone: 732-741-3900
Email: MCanning@ghclaw.com
Email: MFiorovanti@ghclaw.com

Phillip A. Bock (pro hac vice to be submitted)
Class Lawyers, LLC
820 Arthur Godfrey Road # 305
Miami Beach, FL 33140
Telephone: 312-658-5501
Email: service@classlawyers.com

# Exhibit A

# Resilience Lab

Together, we can bridge the gap between technology and mental health access.

## Therapy, made simple.

At Resilience Lab, we believe in whole-person care. We strive to work collaboratively with your practice on continuity of care, and to improve your patients overall physical and mental well-being.

We currently offer psychotherapy and psychiatry services.

## Specialties

- Depression
- Anxiety
- Adjustment
- PTSD
- Substance Use
- LGBTQIA+

+ more

## Modalities

- Mindfulness
- CBT
- DBT
- EMDR
- ACT
- Psychodynamic

+ more

## Therapy for Ages 6+

- Individual
- Couples
- Family
- Group

## Time to care

Appointments in as little as 48 hours.





aetna | Capital | cigna | Harvard Pilgrim Health Care | HIGHMARK HEALTH | Horizon | Massachusetts | Meritain Health | Optum | TUFTS Health Plan | UMR | United Healthcare | WELLFLEET

# How to Refer a Patient

To best support your practice, we want to ensure the referral process aligns with your existing workflow. We accept referrals in any of the following methods.

1. Web form: www.resiliencelab.us/referring-a-client
2. E-fax: (917) 473-9671
3. Referral link
4. Scheduling line: (833) 775-6252

Get in contact

Kyle Pierce
Head of Clinical Partnerships
kyle.pierce@resiliencelab.us
(610) 418-1824

www.resiliencelab.us

928 Broadway
5th floor
New York, NY 10010

# Exhibit B

BOCK HATCH & OPPENHEIM, LLC

820 Arthur Godfrey Rd # 305
Miami Beach, FL 33140-3305
312-658-5500 (Phone) • 312-658-5555 (Fax)

October 31, 2025

**ATTACHED TO COMPLAINT**

Resilience Lab Inc.
928 Broadway, 5th Floor
New York, NY 10010

**Re: Demand for Preservation of Tangible Documents and Electronically Stored Information in *Advantage Medical Associates, P.A., et al. v. Resilience Lab Inc.***

Dear Sir or Madam:

We represent Advantage Medical Associates, P.A., on behalf of itself and a class of similarly-situated persons ("Plaintiff") in the captioned class action case. Plaintiff alleges that Resilience Lab Inc. ("Defendant") sent unsolicited advertisements by fax in violation of the TCPA.

We consider electronic data to be a valuable and irreplaceable source of discovery and evidence in this matter. The laws and rules prohibiting the destruction of evidence apply to electronic data with the same force as they apply to other kinds of evidence.

Plaintiff hereby demands that you preserve all documents, tangible things, and electronically-stored information potentially relevant to the issues in this cause. As used in this document, "you" and "your" refers to Defendant, and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically-stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example, but not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Network Access and Server Activity Logs;
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Project Management Application Data; and
- Back Up and Archival Files (e.g., Zip, .GHO).

ESI also includes information or data stored on proprietary software, databases or systems.

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive Plaintiff of its right to secure the evidence or the Court of its right to adjudicate the issue.

### A. Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI including, without limitation, information with the earlier of a Created or Last Modified date on or after January 1, 2021, through the date of this demand and concerning:

a. All electronic mail ("e-mail") and information about e-mail (including message contents, header information, and logs of e-

mail systems usage) sent or received by Defendant, anyone relating to Defendant, or any employees or agents thereof;

b. All other e-mail and information about e-mail (including message contents, header information, and logs of e-mail systems usage) containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

c. All databases (including all records and field structural information in such databases) containing any reference to and/or information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

d. All logs of faxing activity (including all reports indicating success or failure of attempted transmission) containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

e. All word processing files and file fragments containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

f. All electronic data files and file fragments created by application programs that process financial, accounting, and billing information related to Defendant, or any employees or agents thereof;

g. All files and file fragments containing information from electronic calendars and scheduling programs regarding Defendant, or fax transmissions sent on behalf of Defendant, or any employees or agents thereof;

h. All electronic data files and file fragments created or used via electronic spreadsheet programs where such data files contain information about Defendant or Defendant's intended fax recipients;

i. All other electronic data containing information about Defendant or Defendant's intended fax recipients; and

j. All e-mail from third party sources that may contain references or correspondence relating to Plaintiff, Defendant and/or Defendant's intended fax recipients.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to

protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

**B. Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify, and modify or suspend, features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

**C. Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices maintained offsite, including Cloud Based Data Storage, including any File Transfer Protocol Host Account or Server Storage, whether provided by a server owned or maintained by Defendant or its subsidiaries, agents, or contractors, or maintained by a company on behalf of Defendant, demand is made that you preserve the ESI on those devices.

With regard to all data storage for Defendant or any employee, subsidiary, contractor, or agent thereof, stop any activity which my result in the loss of such electronic data, including the rotation, destruction, overwriting, or erasure of such media in whole or in part, unless a true and correct copy of each such electronic file has been made and steps have been taken to assure that such copy will be preserved and accessible for purposes of this litigation.

**D. Preservation in Native Form**

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

**E. Metadata**

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For e-mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**F. Servers**

With respect to servers like those used to manage e-mail (*e.g.*, Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"),

the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, *e.g.*, its RAID configuration and whether it can be downed or must be online 24/7. Please call to discuss the sufficiency of preservation methods if you have questions.

**G. Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including programs, utilities, logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters, legacy or proprietary devices, and the like.

**H. Paper Preservation of ESI is Inadequate**

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically-stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

**I. Agents, Attorneys, and Third Parties**

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

**J. Preservation Protocols**

We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Alternatively, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.

**K. Do Not Delay Preservation**

I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted because of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

**L. Confirmation of Compliance**

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

Respectfully,

*/s/ Phillip A. Bock*

Phillip A. Bock, Esq.
Class Lawyers LLC
820 Arthur Godfrey Rd # 305
Miami Beach, FL 33140-3305